**EXHIBIT A**

# Dealer Sales and Service Agreement

**KUBOTA TRACTOR CORPORATION**, a California corporation, having its principal place of business at 3401 Del Amo Boulevard, Torrance, California (hereinafter referred to as "KTC"), and _____*Bobcat of Ocala , Incorporated*_____
_____*a Florida corporation*_____
doing business as ("d/b/a") _____*Agricon Equipment Company*_____
(hereinafter referred to as "Dealer")

*(State whether an individual, sole proprietorship, partnership, limited liability company or corporation.  If a business entity, show State in which organized.  If a corporation, partnership or limited liability company, show names of all stockholders, partners or members, as applicable, in Exhibit B.)*

at each of the following approved locations (*Use Exhibit E for additional locations, if necessary*):

| Location 1 | Dealer Name (d/b/a name if different) *Bobcat of Ocala, Incorporated d/b/a Agricon Equipment Company* | Street Address *5211 W. Silver Springs Blvd* | | For KTC USE Only *11186* |
|---|---|---|---|---|
| | City *Ocala* | State *FL* | Zip *34482* | County *Marion* |
| Location 2 | Dealer Name (d/b/a name if different) | Street Address | | For KTC USE Only |
| | City | State | Zip | County |
| Location 3 | Dealer Name (d/b/a name if different) | Street Address | | For KTC USE Only |
| | City | State | Zip | County |

(each location listed above or in Exhibit E is hereinafter referred to
as a "Retail Store" and collectively as the "Retail Stores")

hereby agree as follows:

1.     **Appointment.**

A.     **Dealer Established.**  KTC hereby appoints Dealer as an authorized dealer of the Kubota products listed in Exhibit A to this Agreement (hereinafter referred to as "Products") at, and grants Dealer the non-exclusive right to purchase Products for resale from, the Retail Store(s).  KTC shall have the right in its sole discretion to add items to and delete items from Exhibit A from time to time, and Dealer's rights and obligations under this Agreement to promote and resell the Products shall only extend to the Products listed in Exhibit A, as so amended from time to time.  Dealer hereby accepts this appointment and agrees to be bound by all of the terms and conditions of this Agreement.  Dealer shall not establish separate or branch locations for resale of Products other than the Retail Store(s) and shall not change its business location(s) from that of the Retail Store(s).  KTC reserves the right, in its sole discretion, to directly or indirectly sell Products to others and to enter into Dealer Sales and Service Agreements with others at any location within or without the locale wherein Dealer maintains the Retail Store(s).

1

B.   **Listing of Owners and Managers**.  The above appointment of Dealer has been made by KTC and this Agreement entered into by KTC in reliance upon Dealer's representation and agreement that the natural person(s) listed in Exhibit B to this Agreement and only those natural person(s) shall be the executive manager(s) of Dealer.  Dealer represents that the person(s) listed in Exhibit B as executive manager(s) of Dealer shall have full managerial authority for the operating management of Dealer in the performance of this Agreement.  In addition, the above appointment of Dealer has been made by KTC and this Agreement entered into by KTC in reliance upon Dealer's representation and agreement that the person(s) listed in Exhibit B to this Agreement and only those person(s) shall be the owner(s) of Dealer, and in reliance upon Dealer's specification in Exhibit B of which owners are actively involved in the management of Dealer or in the operation of the Retail Store(s) (the "Active Owner(s)"), if any, and which owners are passive investors (the "Passive Owner(s)"), if any.  If Dealer is directly owned by an entity or entities other than natural persons, then Dealer will include in Exhibit B the ownership structure of all of the direct and indirect owners of Dealer and shall specify whether such persons are Active Owner(s) or Passive Owner(s).  Dealer further agrees to notify KTC in writing promptly upon Dealer acquiring knowledge that any of the natural persons set forth in Exhibit B own a direct or indirect ownership interest in any other authorized KTC dealer.

C.   **United States Only**.  In no event shall Dealer be permitted to sell, ship or service Products, directly or indirectly, outside the United States, its territories or possessions, without the express, written permission of KTC, signed by an officer thereof.  If Dealer is given permission to sell, ship or service Products outside the United States, it must provide summary reports to KTC that list the dollar volume and product serial numbers shipped on a per country basis.  If a Retail Store is located in the United States territories of Guam, Puerto Rico or the U.S. Virgin Islands, KTC hereby grants its consent to Dealer to sell Products in such territory subject to the terms and conditions of this Agreement.

2.  **Orders and Delivery of Products.**

A.   **Orders for Products**.  Dealer shall submit to KTC firm orders for Products in such quantities and variety as are reasonably necessary to fulfill Dealer's obligations under this Agreement.  All orders shall be subject to acceptance by KTC and may be accepted by KTC in whole or in part.  Such orders shall not be cancelable by Dealer after acceptance by KTC.  From time to time, KTC may specify, in writing to Dealer, the minimum numbers of Products that Dealer shall be obligated to order.

B.   **Delivery of Products**.  KTC shall not be liable for failure or delay in delivery to Dealer of Products so ordered where such failure or delay is due to non-receipt of Products from a manufacturer thereof; shortage or curtailment of labor, material, transportation or utility services; strikes or labor disputes in connection with the operations of KTC or any other person or entity; war, insurrection or acts of terrorism; or to any other cause or causes beyond KTC's reasonable control.  KTC

shall have the right, at its sole discretion, to allocate available Products among Dealers.

C.   **Shipment of Products.**   KTC will ship Products by whatever mode of transportation, by whatever route and from whatever point KTC may select.   All transportation and insurance charges shall be for Dealer's account.   Dealer shall bear the risk of loss or damage to Products from and after delivery thereof to Dealer or to a carrier for transportation to Dealer, whichever shall occur first. Dealer shall be responsible for and shall pay all charges for demurrage, storage and other expenses accruing after shipment.   If diversions of shipments are made upon Dealer's request or as a result of Dealer's failure or refusal to accept shipments made pursuant to Dealer's orders, Dealer agrees to pay all additional charges and expenses incident to such diversions.

D.   **Product and Channel Changes.**   KTC shall have the right, at any time, in its sole discretion, to discontinue the supply of, or make changes in the design, manufacture or component materials of Products and to use alternative distribution channels for Products.   KTC shall be under no liability to Dealer on account of any such discontinuance, change or distribution and shall not be required to repurchase or make such change to, or otherwise modify, Products previously purchased by Dealer.

E.   **Orders and Records for Multiple Retail Stores.**   Unless KTC otherwise agrees, Dealer shall submit orders and maintain records for each Retail Store separately and independently of any other Retail Store under this Agreement.   Dealer may request, from time to time, and KTC may, in its sole discretion, allow Dealer, to integrate and aggregate its orders and records for multiple Retail Stores under this Agreement.   KTC, in its sole discretion, may designate each Retail Store, whether ordering separately or in the aggregate with other Retail Stores, with a separate store identification number or locator.

3.   **Price Changes, Taxes.**   KTC may, without prior notice and without incurring any liability to Dealer, or anyone else, change at any time and from time to time the price of any Product and any such price change shall apply to all orders shipped after the effective date of such change, even if accepted by KTC prior thereto; provided, however, KTC will notify Dealer of any such change in price and Dealer may, by written notice to KTC within ten (10) days thereafter, cancel any unshipped orders that are affected by such price change and that were placed before receiving notice thereof. Dealer represents and warrants that Products purchased by it are purchased for resale or, if allowable, rental, to end users in the ordinary course of Dealer's business (and not to jobbers, unauthorized dealers or other retailers) and that Dealer will obtain all licenses and will comply with all applicable requirements with respect to the collection of sales, use or other taxes arising from the resale or, if allowable, rental, of Products by Dealer and will furnish KTC with evidence thereof at KTC's request.   Dealer agrees, as to any Products put to a taxable use by Dealer or purchased by Dealer other than for resale or, if allowable, rental, to pay directly to the appropriate taxing authorities any sales, use or similar taxes incurred as a result of such use or purchase and to file any tax returns or reports required in connection

3

therewith.  Dealer shall comply with all laws and regulations respecting the reporting, collection and payment of taxes applicable to the purchase, use, sale or rental of Products by Dealer and shall indemnify KTC against assessment thereof.

4.    **Payment and Security Interest.**

    A.    **Payment Terms.**  The terms and conditions of sale of all orders for Products placed by Dealer and accepted by KTC shall be as set forth in the KTC Dealer Terms and Discount Schedule, as the same may be amended in the sole discretion of KTC from time to time. Each sale of Products by KTC to Dealer may, at KTC's sole discretion, be paid for by cash, on open account, C.O.D., pursuant to flooring financing arrangements previously made by Dealer and accepted by KTC or pursuant to other terms and conditions as determined by KTC.

    B.    **Security Interest in Products.**  To secure the performance and payment of all obligations of Dealer to KTC, whether now existing or hereafter arising and of every kind and character, including but not limited to the purchase price of any and all Products and the financing extended by KTC to Dealer for used inventory and equipment financing, Dealer hereby grants to KTC a security interest in and an assignment of all Products and any other tractors, engines, spare parts, attachments, accessories, implements and any and all other items and inventory sold by KTC to Dealer, in all cases whether paid or unpaid, together with any and all used inventory, engines, spare parts, attachments, accessories, implements and any and all other items financed by KTC, whether now owned or hereafter acquired and wherever located, and any and all proceeds, accounts receivable, contract rights, general intangibles and/or chattel paper arising from the sale, rent, lease, license, exchange or other disposition of the above described property, including any and all trade-ins, and all equipment, inventory, accounts receivable, general intangibles, chattel paper, documents, instruments and other personal property of any type acquired with any cash proceeds, and any and all items, replacements, substitutions, accessions, additions and proceeds of all of the above (hereinafter jointly referred to as "Collateral").

    C.    **Filing of Financing Statements.**  Dealer agrees to execute originals of such Uniform Commercial Code Financing Statements or other appropriate documents as KTC shall request and also agrees that KTC may file and record the same to perfect and protect its security interest at such places and with such public officials as KTC determines.  Dealer authorizes KTC to file, in jurisdictions where this authorization will be given effect, Financing Statements signed only by KTC.

    D.    **Location of Collateral.**  Subject to Paragraph 14 (Rental Policy) hereof and Paragraph 4.F. below, Dealer does and shall keep all Collateral acquired pursuant to this Agreement at the Retail Store(s) or at such other locations approved in writing by KTC solely for the purpose of  Dealer's storage of the Products, and shall keep all of its records related to this Agreement at a Retail Store.

E.      **Inspection of Collateral.**  Dealer agrees that KTC or its agents may inspect and conduct an inventory of the Collateral and the Dealer's records from time to time during normal business hours, without prior notice, and Dealer agrees to reasonably cooperate with any such inspection.

F.      **Settlement of Collateral.**  Subject to Paragraph 14 (Rental Policy) hereof, Dealer shall not remove Collateral from the Retail Store(s) or from the storage locations referenced in Paragraph 4(D) above except for demonstrations and dispositions in the ordinary course of Dealer's business.  Dealer shall have no right to dispose of Collateral except in the ordinary course of business upon customary terms for value received, and then only upon the express condition that at the time of sale (or, if allowable, rent or lease) and on or before delivery to a third party, Dealer shall secure payment from the customer in form satisfactory to KTC.  Dealer shall pay KTC the full amount due to KTC with respect to any Collateral disposed of by Dealer in accordance with the terms of this Agreement, and until such time, Dealer shall segregate the proceeds and hold the same in trust for KTC.  Dealer shall be entitled to transfer proceeds free of trust if, at or prior to the time of such transfer, the payment due from Dealer to KTC shall be assured to the satisfaction of KTC.

5.  **Insurance.**  Dealer shall procure and maintain, continuously during the term of this Agreement and for such further time as Dealer shall have any outstanding indebtedness to KTC, insurance insuring the Collateral against all usual and ordinary risks of loss or damage.  All such insurance shall be with insurers satisfactory to KTC, shall be in amounts sufficient to cover the full value of the Collateral, shall name KTC as loss payable payee, and shall not be cancelable unless Dealer (i) delivers thirty (30) days' written notice of such cancellation to KTC and (ii) procures and maintains an alternate insurance policy meeting the requirements set forth in this Paragraph 5 and providing for the continuous, uninterrupted insurance of the Collateral.  Dealer shall provide KTC with copies of all such policies and replacement policies of insurance.

6.  **Dealer Performance Expectations.**

A.      **Quality and Performance.**  Throughout the term of this Agreement, Dealer shall use commercial best efforts and cause its officers, managers, employees, agents and contractors to use their commercial best efforts to aggressively promote, advertise, and operate each Retail Store, to promote, advertise and sell the Products at each Retail Store, and to perform prompt and proficient customer care, warranty, repair and other services relating to the Products at each Retail Store, in each case to ensure customer satisfaction and to enhance the value and reputation of the Products, consistent with good business practices, the highest ethical standards, and the high standards and prestige represented by the Products (the "Quality and Performance Standards").

B.      **Sales Goals.**  KTC and Dealer shall meet annually at such place and time during normal business hours as KTC may reasonably request (the "Annual Sales Meeting") to jointly establish reasonable sales performance goals under this

Agreement for the Dealer and for each Retail Store and the time period(s) over which they are to be met (the "Dealer Sales Goals"); provided, however, that in the event Dealer and KTC fail to have an Annual Sales Meeting or to agree on the Dealer Sales Goals for any Retail Store at such a meeting, then KTC shall be entitled, in good faith, to establish the Dealer Sales Goals for such Retail Store(s) after offering to Dealer a reasonable opportunity to consult in the establishment of these objectives.

C.   **Service Certification.**  Dealer shall satisfy and maintain the standards required to complete the Kubota Tractor Corporation Technical Service Certification Level I program at each Retail Store, as specified in the Kubota Tractor Corporation Technical Service Certification Program Application, as the same may be amended in the sole discretion of KTC from time to time, a current copy of which has been delivered or will be delivered to Dealer promptly after the execution of this Agreement by KTC (the "Service Standards").

D.   **Facilities, Personnel and Inventory.**  Throughout the term of this Agreement, for each Retail Store, Dealer shall (i) maintain a modern, suitable place of business with adequate space and facilities for sales, service, display and storage; maintain therein an attractive display of Products and of signs, sales and promotional literature regarding Products, and comply with standards set by KTC in good faith, after consideration of the Products to be sold by Dealer at each such Retail Store, and communicated to Dealer from time to time; (ii) maintain skilled management and a suitable staff of sales, service and product support personnel capable of rendering assistance to its customers and potential customers and adequately trained in demonstrating the use of Products; and (iii) maintain an inventory of Products constituting adequate stock to serve the competitive requirements of the local market surrounding each such Retail Store (the "Local Market") and to satisfy the Dealer's obligations hereunder (collectively, the "Facilities, Personnel and Inventory Standards").  From time to time, KTC may specify, in writing to Dealer, the minimum numbers of Products that Dealer shall be obligated to maintain in inventory.

E.   **Advertising.**  Dealer shall present KTC and the Products in a manner consistent with the premium nature of the brands of Kubota and of the Products.  All on-site and off-site communications, advertising, and other communications with end-users shall be consistent with a premium brand image and shall comply with standards set by and under the control of KTC and communicated to Dealer from time to time.  Dealer shall establish and maintain, independently and in conjunction with KTC, advertising and marketing policies that emphasize the high-quality, high-value characteristics of the Products.  Dealer shall not publish or cause or permit to be published any advertising of the Products or material relating to KTC likely to mislead or deceive the public or to injure, diminish or adversely affect the reputation or prestige of the Products or of KTC.  Dealer shall, promptly upon notice from KTC, discontinue any advertising which KTC considers may be injurious to its or to the Products' reputation or prestige.  KTC may, from time to time, make available to Dealer signs, brochures and other

promotional and advertising materials relating to KTC or the Products, in such quantities as KTC may determine, and Dealer shall maintain an attractive display thereof in the Retail Store(s). KTC may, from time to time, at its sole discretion, establish, change or discontinue cooperative advertising plans, pursuant to which it may contribute a portion of the cost incurred by Dealer in advertising and promoting Products. If Dealer, in its sole discretion, elects to participate in any such plans, it agrees to do so strictly in accordance with the provisions thereof. (The foregoing obligations are collectively referred to herein as the "Advertising Standards".)

F.     **Information Technology**.  Throughout the term of this Agreement, Dealer shall maintain a modern, suitable complement of information technology hardware and software sufficient to enable Dealer to operate the Retail Store(s), to interface with any information technology programs employed by KTC, to operate any software programs provided by KTC, and to comply with the information technology standards set by KTC and communicated to Dealer from time to time (the "IT Standards").

G.     **Financial Viability.** Dealer shall maintain, with respect to each Retail Store, a sufficient net worth and level of working capital necessary to permit the normal and prudent operation of each such Retail Store in accordance with its prior history and its current and expected financial needs, and to otherwise reasonably assure KTC of Dealer's ability to meet its obligations under this Agreement (the "Financial Viability Standards").

H.     **Financial Information.**  Dealer shall keep complete and accurate books and records of account with respect to each Retail Store, including stock and sales records of Products, in a format acceptable to KTC and in accordance with recognized accounting practices.  Within ninety (90) days after the end of the Dealer's fiscal year and at such other times as KTC may request, Dealer shall furnish KTC, in a format acceptable to KTC, with (i) full and complete financial and operating statements, accurately and fairly reflecting its financial position and results of operations and including, without limitation, its balance sheet and statement of income for the most recently completed fiscal year or such other period as KTC may reasonably request; (ii) for each person guaranteeing the obligations of Dealer under this Agreement in accordance with the General Continuing Guarantee form attached hereto as Exhibit C, full and complete financial information, accurately and fairly reflecting the financial position and, in the case of individuals, net worth, of such person and including, where requested, a copy of such person's U.S. federal income tax return for the most recently completed fiscal year; and (iii) such additional financial information as KTC may reasonably request.  KTC shall have the right to periodically obtain credit reports on Dealer and on any guarantors of Dealer's obligations under this Agreement. (The foregoing obligations are collectively referred to herein as the "Financial Information Standards.")  Except to the extent required by law, regulation, legal process or regulatory authority, unless otherwise agreed to in writing by Dealer, KTC agrees to keep all such financial information confidential.

I. **Business Location.** Dealer shall maintain the location(s) of the Retail Store(s) at the location(s) set forth on the first page (and, if applicable, Exhibit E) of this Agreement, shall focus the sales, service, and marketing efforts for the Retail Store(s) in the Local Market(s) and shall not, either directly or indirectly, (i) relocate a Retail Store, (ii) establish, maintain, or operate a facility at any other location for displaying, selling, renting, leasing, or servicing Products, except as permitted in this Agreement, (iii) display, sell, rent, lease or service Products from any other location except as permitted in this Agreement, or (iv) employ, or knowingly sell Products to, any subdistributors, subagents, jobbers or unauthorized dealers (the "Business Location Requirement").

J. **Ownership and Management.** The Active Owner(s) and executive manager(s) listed in Exhibit B shall stay actively and continuously involved in the operation of the Retail Store(s). Within ninety (90) days after the end of the Dealer's fiscal year and at such other times as KTC may request, Dealer shall furnish KTC with (i) an updated list of the names of the executive manager(s) and the direct and indirect Active Owner(s) and Passive Owner(s) required to be listed in Exhibit B, including, without limitation, updated information concerning any changes in the direct and indirect ownership of Dealer; and (ii) such additional information about the direct and indirect owner(s) and executive manager(s) of Dealer as KTC may reasonably request (collectively, the "Ownership Information").

K. **Audit and Compliance Rights.** KTC and its duly authorized representatives shall have the right, during normal business hours, without advance notice, to inspect the Retail Store(s) to monitor the quality of the operation of the Retail Store(s), the quality of the Products and the services provided therein, the quality of the promotional and advertising materials, and Dealer's overall compliance with the terms and conditions of this Agreement (the "Audit and Compliance Rights"). Dealer shall take all such action as reasonably may be necessary or appropriate in order to assist KTC and its representatives in this regard, including, without limitation, assisting in the audit or review of Dealer's financial records.

7. **Dealer Identification - Signs.** Insofar as permitted by local laws and regulations, Dealer shall display at the Retail Store(s) signs identifying it as an authorized Kubota Dealer. All such signs shall be subject to the approval of KTC and shall comply with KTC's Corporate Style Guide (the "Logo Policy"). Dealer shall maintain such signs in good condition at all times. Dealer shall maintain a listing in the classified telephone directory in the Local Market identifying it as an authorized Kubota Dealer.

8. **Trademarks - Use of Tradenames.** Subject to Dealer's compliance at all times with this Agreement and KTC's Logo Policy, KTC grants (and Dealer accepts) a limited, non-assignable, non-sublicensable, non-exclusive, royalty-free, fully paid-up license to the KTC trademarks and servicemarks owned and used by KTC in connection with the promotion of the Products, except for those that KTC notifies Dealer from time to time are excluded from the scope of this Agreement (the "Licensed Marks"), for the promotion and sale of the Products in the Local Market(s). Dealer agrees that (i) no other license or right of any kind is granted (expressly or by implication); (ii) as between KTC and

Dealer, KTC is the owner of all right, title, and interest in and to, and all goodwill now or hereafter attached to, the Licensed Marks; and (iii) Dealer shall cause to appear such designations, legends, markings or notices as may be necessary, or as KTC may reasonably require, to give notice of the status of the Licensed Marks and KTC's rights and interests therein.  Dealer shall not, at any time or in any manner, (i) engage in any activity or do or permit any act that may in any way reduce the value of, or derogate from the repute of, the Licensed Marks or any registrations or applications for registration thereof; (ii) use any variation, abbreviation, stylization, or derivative of the Licensed Marks, or combination of the Licensed Marks with a third-party mark, brand, name, logo, domain name, or other source indicator to create a composite or co-branded mark, in each case without KTC's prior written consent, which consent may be withheld in KTC's sole discretion; or (iii) register any domain name or mark resembling or confusingly similar to the Licensed Marks with any registration agency.

9.    **Warranties and Warranty Service.**

A.    **Warranty Policy.**  There are no warranties, express or implied, made by KTC or by the manufacturers of Products, except as shall be set forth in the Kubota Limited Warranty, a current copy of which has been delivered or will be delivered to Dealer promptly after the execution of this Agreement by KTC, and in warranty and service bulletins and instructions issued from time to time by KTC. **THIS LIMITED EXPRESS WARRANTY IS IN LIEU OF AND TO THE EXCEPTION OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT BY WAY OF LIMITATION, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

**UNDER NO CIRCUMSTANCES SHALL KTC BE SUBJECT TO ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE OR CONTINGENT DAMAGES WHATSOEVER, WHETHER BASED ON CONTRACT, TORT, STRICT LIABILITY OR OTHER THEORY OF LAW, ALL SUCH DAMAGES AND CLAIMS BEING SPECIFICALLY DISCLAIMED.**

B.    **Warranty Statements.**  KTC and the manufacturers of Products may warrant the same to retail purchasers thereof.  Dealer shall comply with (i) the Kubota Tractor Corporation Warranty Handbook, a current copy of which has been delivered or will be delivered to Dealer promptly after the execution of this Agreement by KTC, (ii) all KTC Materials (as defined in Paragraph 18), and (iii) all applicable laws with respect to pre-sale availability and delivery of statements of such warranties to customers and prospective customers.  Dealer shall make no other warranties or representations to customers or to the public with respect to Products on behalf of KTC or the manufacturers of Products.

C.    **Pre-Delivery Service.**  Dealer shall perform pre-delivery inspection and service specified by KTC on all Products prior to delivery thereof to Dealer's customers, in accordance with the Inspection, Orientation and Delivery Receipt forms supplied by KTC, as the same may be amended in the sole discretion of KTC

from time to time (the "Pre-Delivery Forms").  Dealer shall sign the Pre-Delivery Forms upon completion, obtain the acknowledgement and signature of the Dealer's customers upon the same, securely maintain the same at a Retail Store, and, upon request by KTC, forward originals or copies thereof to KTC by whatever means KTC reasonably requests.  If the laws of the state in which Dealer is located require the installation on Products of equipment not installed thereon by KTC, Dealer shall, prior to its sale of Products on which such installation is required, install the same and notify the customer that such installed equipment is excluded from coverage under the Kubota Limited Warranty. (The foregoing obligations are collectively referred to herein as the "Pre-Delivery Service Standards".)

  **D.**  **Warranty and Delivery Registration.**  Dealer shall promptly notify KTC, on forms to be provided by KTC, of the names, addresses and other information requested by KTC of each retail purchaser to whom Dealer sells Products, and of each subsequent purchaser of used Products of which Dealer has knowledge, to enable KTC to properly register the warranty thereof.  Dealer shall maintain a record of the names and addresses of each such purchaser sufficient to enable it, KTC and the manufacturers of Products to notify said purchasers of Product recalls and of Product improvement campaigns and to otherwise fulfill their responsibilities pursuant to federal, state and other product safety, emissions and other laws and regulations.  Upon KTC's request, Dealer shall make such records available to KTC for inspection and copying.  Dealer shall promptly take such steps as KTC shall prescribe in implementing and completing any action undertaken by KTC or the manufacturers of Products pursuant to such Product recalls, Product improvement campaigns, laws and regulations.

  **E.**  **Warranty Service.**  Dealer shall promptly and efficiently render warranty service to the owners of Products, whether or not sold by Dealer, in accordance with the then current Kubota Limited Warranty, the Kubota Tractor Corporation Warranty Handbook, any Product improvement campaign, and all applicable KTC Materials (as defined in Paragraph 18) heretofore and hereafter issued by KTC.

  **F.**  **Warranty Service Reimbursement.**  KTC shall reimburse Dealer for work done by Dealer pursuant to this Paragraph 9 of this Agreement in accordance with any KTC Materials (as defined in Paragraph 18) related to warranty service reimbursement.  KTC shall have the right to credit any amounts it owes Dealer toward the payment of amounts owed by Dealer to KTC.

  **G.**  **Warranty Liability.**  Dealer shall indemnify KTC and the manufacturers of Products and hold them harmless from and against any and all liabilities that may be asserted or arise by reason of Dealer's failure, in whole or in part, to fulfill its duties pursuant to this Paragraph 9 of this Agreement.

**10.**  **Kubota Replacement Parts.**  Dealer shall not offer for sale or use in the repair or servicing of Products, as a genuine Kubota replacement part, any part that is in fact not a genuine new Kubota part.  Dealer shall not use in the repair or servicing of Products any

part that is not equivalent in quality and design to genuine new parts supplied or approved by KTC.

11.     **Permits and Licenses.**  Dealer shall procure and maintain, at all times that this Agreement shall be in effect, all permits, licenses and governmental authorizations required for Dealer to conduct the business contemplated by this Agreement.  Dealer shall comply with all applicable laws in the operation of each Retail Store.

12.     **Internet Policy.**  Dealer shall fully and completely comply with the Kubota Tractor Corporation Internet Policy, as the same may be amended in KTC's sole discretion from time to time, a current copy of which has been delivered or will be delivered to Dealer promptly after the execution of this Agreement by KTC.

13.     **Term.**  This Agreement is made for a term beginning on the date of execution hereof by KTC and, unless earlier terminated as hereinafter provided, ending one year thereafter. This Agreement shall be renewed for up to ten (10) additional successive terms of one year each unless either party shall give the other notice of non-renewal not less than sixty (60) days prior to the end of the then current term.

14.  **Rental Policy**.

    A.     **General Policy.**  KTC and the Dealer hereby acknowledge and agree that it may be beneficial to both KTC and Dealer if Dealer were, from time to time, to rent or lease Products to customers from the Retail Store(s) ("Rentals").  Unless otherwise agreed to by KTC in writing, such Rentals by Dealer are prohibited hereunder.  KTC reserves the right to establish the terms and conditions of any program under which such Rentals may be permissible hereunder from time to time.  KTC and Dealer hereby agree that such programs may be published by KTC on KubotaLink or otherwise.

    B.     **Rental Program Requirements.**  Any program under which KTC allows Rentals will be subject to the following:

        (i)     each Rental must include the granting of a security interest by the rental customer, acceptable to and in favor of KTC, in any Products so rented or leased by Dealer;

        (ii)    no Rentals will be allowed if Dealer is in default under this Agreement;

        (iii)   KTC may set forth the terms and conditions offered to rental customers, including any required down payment, interest rates, preliminary credit investigation of the rental customer, payment schedules, etc.;

        (iv)    KTC may require that it approve or provide the form of agreement under which rental customers rent or lease Products; and

        (v)     Dealer will be required to subordinate any claims it may have against any rental customer to any claims KTC may have against such rental customer.

C.  **Right to Not Establish, Terminate or Amend Programs**.  KTC is under no obligation to establish any Rental programs and, if KTC should so establish any such Rental program, KTC reserves the right to terminate, amend or modify any such Rental program, in its sole discretion, at any time thereafter.

15.  **Default Under This Agreement.**

A.  **Events of Default.**  Dealer shall immediately be in default under this Agreement (hereinafter, "Default") upon the happening of any of the following events (unless otherwise provided below):

(1)  Payment Defaults.  The failure of Dealer to pay KTC any of Dealer's obligations to KTC arising from the purchase of Products or services from KTC or otherwise owing to KTC pursuant to this Agreement, in accordance with the payment terms of the invoice accompanying any such purchase, on the date of Dealer's sale of the Products, or otherwise on the due date therefor, whichever is earlier; provided that in the event the state law applicable to Dealer provides that a time period must lapse before a default may occur as a result of the foregoing, then the Default under this clause (1) shall be deemed to occur only, and immediately, upon the expiration of any such time period.

(2)  Business Location.  The failure of Dealer to fully and completely satisfy the Business Location Requirement (see Paragraph 6.I.).

(3)  Performance Defaults.  The failure of Dealer to fully and completely satisfy the: (i) Quality and Performance Standards (see Paragraph 6.A.); (ii) Dealer Sales Goals (see Paragraph 6.B.); (iii) Service Standards (see Paragraph 6.C.); (iv) Facilities, Personnel and Inventory Standards (see Paragraph 6.D.); (v) Advertising Standards (see Paragraph 6.E.); or (vi) Information Technology Standards (see Paragraph 6.F.); in each case after the expiration of six (6) months following receipt of written notice from KTC, or such longer period as Dealer and KTC may agree upon in writing.

(4)  Internet Policy.  Dealer's failure to fully and completely comply with the Internet Policy after the expiration of thirty (30) days following receipt of written notice from KTC, or such longer period as Dealer and KTC may agree upon in writing.

(5)  Financial Standards and Inspection Rights.  Dealer's failure to fully and completely satisfy its obligations with respect to (i) the Financial Viability Standards (see Paragraph 6.G.), (ii) the Financial Information Standards (see Paragraph 6.H.), (iii) the Audit and Compliance Rights (see Paragraph 6.K.) or (iv) Paragraph 4.E hereof.

(6)  Repayment of Borrowed Funds.  The failure of Dealer to satisfy any obligation of Dealer for the payment of borrowed money, for the payment

of the deferred purchase price of property or for the payment of taxes not paid when due, whether by acceleration or otherwise, or which shall be lawfully declared to be due and payable or shall be lawfully required to be prepaid prior to the stated maturity thereof.

(7)     <u>Termination of Other Dealer Sales and Service Agreements</u>.   The termination by KTC of any other Dealer Sales and Service Agreement existing on the date hereof or entered into hereafter by Dealer or any executive manager or Active Owner of Dealer, on the one hand, and KTC, on the other hand.

(8)     <u>Insolvency or Bankruptcy</u>.   (a) Insolvency of Dealer or (b)(i) the commencement by Dealer of any voluntary case under any federal or state bankruptcy, insolvency, reorganization, moratorium or other similar law (each, a "Bankruptcy Act"); (ii) the institution against Dealer of any involuntary proceeding under any Bankruptcy Act which is not vacated within twenty (20) days from the institution thereof; (iii) the appointment of a receiver or other officer having similar powers for Dealer or Dealer's business, who is not removed within twenty (20) days from his appointment; or (iv) any levy under attachment, execution or similar process which is not vacated or removed within ten (10) days.

(9)     <u>Discontinuance of Business</u>. Dissolution or liquidation of Dealer or any discontinuance of Dealer's business.

(10)    <u>Adverse Judgments and Liens</u>.  Final judgment shall be rendered against Dealer, and the execution thereof is not stayed by settlement or court order within thirty (30) days after entry; or Dealer or any of its assets becomes subject to any lien, garnishment, execution or attachment proceeding and such proceeding is not dismissed or bonded within thirty (30) days from the commencement thereof.

(11)    <u>Criminal Convictions</u>.  The conviction of or plea of <u>nolo contendere</u> to a felony (or misdemeanor involving an act of dishonesty, deceit or fraud) by any owner or executive manager of Dealer, whether or not in connection with the business of the Dealer.

(12)    <u>Material Breach</u>   Other than as provided in this Paragraph 15.A, the material breach by Dealer of any other obligation owed to KTC pursuant to this Agreement, which remains uncured for ten (10) business days following receipt of written notice from KTC.

**B.**   **Rights And Obligations Upon Default.**   Upon the occurrence of any Default, Dealer further agrees:

(1)     To assemble Collateral and make it available to KTC at Dealer's place of business or at a place to be designated by KTC which is reasonably convenient to both KTC and Dealer;

      (2)      KTC may notify Dealer's account debtors or obligors on instruments to Dealer to make payment to KTC which KTC may apply to reduce Dealer's indebtedness to KTC;

      (3)      That KTC may pursue any other remedies afforded to it by applicable law;

      (4)      To pay all expenses of retaking, holding, preparing for sale and selling Collateral and attorneys' fees, costs and expenses incurred by KTC in enforcing any of the rights granted to KTC pursuant to this Paragraph 15, including attorneys' fees incurred in dealing with any aspect of a bankruptcy, reorganization or similar proceeding;

      (5)      That KTC may enter upon Dealer's premises at any time to repossess Collateral. Dealer hereby waives all rights and claims for trespass or conversion and damages in any manner thereby caused by KTC; and

      (6)      To waive any right of offset, against monies purportedly owed by KTC to Dealer, that Dealer may otherwise claim against KTC.

**C.**      **Payment of Obligations When Default Occurs.** If any Default shall occur, KTC may terminate any outstanding and unfulfilled commitment to Dealer and/or declare all obligations of Dealer to KTC to be immediately due and payable. A late payment charge will be assessed by KTC and promptly paid by Dealer on any obligation not paid when due, whether as a result of acceleration, maturity, or otherwise, at the Past Due Interest Rate set forth in the KTC Dealer Standard Terms and Discount Schedule, as such rate may be adjusted from time to time; provided, however, that such late payment charge shall not be assessed at a rate which exceeds the maximum permitted by law.

**16.**      **Termination.**

**A.**      **Termination by Dealer Notice.** Dealer may, at any time, terminate this Agreement upon thirty (30) days' written notice to KTC.

**B.**      **Termination by Immediate Notice.** Except and to the extent as otherwise required by applicable law (in which case KTC shall be entitled to terminate this Agreement as soon as any such law may allow), KTC shall have good cause to terminate and may terminate this Agreement, at any time, with immediate effect, upon written notice to Dealer, upon the occurrence of any of the following events:

      (1)      Any Default by Dealer;

      (2)      Death of Dealer if Dealer is an individual, or any change, whether voluntary or by operation of law, in Dealer's ownership or management;

      (3)      Any transfer or attempted transfer (by operation of law or otherwise) of this Agreement by Dealer, in whole or in part;

(4)     Submission by Dealer or any owner or executive manager of Dealer to KTC of any false or fraudulent report, statement or claim; or

(5)     The willful failure by Dealer to comply with the provisions of any law or regulation relating to the operation of the Retail Store(s).

C.     **Termination by KTC Notice**.  KTC shall have good cause to terminate and may terminate this Agreement, at any time, upon ninety (90) days' written notice to Dealer upon the occurrence of any of the following events:

(1)     The determination of KTC to offer to Dealer a Kubota Dealer Sales and Service Agreement in a new or amended form being offered to authorized Kubota Dealers pursuant to a national campaign to revise or update such agreements; or

(2)     The decision by KTC to (a) discontinue the Products that are the subject matter of this Agreement; or (b) sell, convey, merge or otherwise transfer all or a substantial portion of the part(s) of the business of KTC responsible for the Products that are the subject matter of this Agreement.

D.     **Termination of One or More Retail Store(s).**  In the event that a right to terminate arises under Paragraph 16.B., and the events or occurrences giving rise to such right of termination arise from or are attributable to less than all of the Retail Store(s), then KTC may elect, in its sole discretion, to terminate this Agreement at any time, with immediate effect, upon written notice to Dealer, solely with respect to any one or more Retail Store(s) from which the events or occurrences giving rise to such right of termination arise or are attributable.  In the event of a partial termination under this Paragraph 16.D., KTC may exercise all of its rights against Dealer with respect to the Retail Store(s) that is (are) a subject of the termination, and this Agreement shall continue and shall remain in full force and effect with respect to Dealer and each Retail Store that is not the subject of such partial termination.

17.     **Rights, Liabilities and Obligations Upon Termination.**

A.     **Result of Termination or Expiration.**  Upon termination or expiration of this Agreement:

(1)     <u>Amounts Owed</u>.  Dealer shall promptly pay all sums owed to KTC.

(2)     <u>Sales Materials and Signs</u>.  Dealer shall immediately remove from its place of business, at its expense, and discontinue the use of, all KTC signs, trademarks and tradenames used by Dealer in connection with sale or lease of Products.  Dealer shall immediately discontinue the use of, and shall return to KTC, all advertising and promotional materials and technical and service manuals, whether in hard copy or electronic format, furnished to Dealer by KTC.  Dealer shall refrain from thereafter holding itself out, in any way, as an authorized Kubota Dealer.  Notwithstanding

the foregoing, KTC shall have the right, upon sixty (60) days' advance written notice to Dealer, to enter the Retail Store(s) and remove all such signs, advertising and promotional materials, and manuals from the Retail Store(s) not so removed by Dealer, and Dealer agrees to reimburse KTC for the actual and reasonable costs of such removal, which may be charged by KTC to Dealer's account.

(3)     Unshipped Orders.   All unshipped orders for Products shall be deemed cancelled.

(4)     Warranty and Credit Claims.   KTC shall process any pending warranty reimbursement or other credit claims submitted by Dealer and shall reimburse Dealer for any such claims properly due and payable to Dealer, subject to any rights of offset of KTC against Dealer.

(5)     Licensed Marks.   All rights of Dealer under this Agreement to the Licensed Marks shall terminate and automatically revert to KTC and Dealer shall immediately discontinue all use of the Licensed Marks and shall no longer have any right to use the Licensed Marks or any variation or simulation thereof in any manner or for any purpose whatsoever.

(6)     Return of Company Materials.   Dealer shall return to KTC all materials, whether in hard copy or electronic format, regarding the Products, including, without limitation, all price books, maintenance manuals, parts and service policy manuals, service bulletins, parts catalogues, sales aids, advertising material, and other publications by KTC, all without cost to KTC, except as required by applicable law.

(7)     Repurchase of Products Upon Termination.   Except and to the extent otherwise required under applicable state law, KTC shall have the option, exercisable within thirty (30) days after the date such termination or expiration becomes effective, to repurchase from Dealer (a) any new, complete, unused, undamaged, current and saleable Products purchased by Dealer from KTC which are the unencumbered property of and in the possession of Dealer, at the net invoice price paid by Dealer therefor and (b) any information technology hardware, signs, and special tools purchased from KTC by Dealer, at the net invoice price paid by Dealer therefor, depreciated from the date of purchase from KTC at a rate of one-third (1/3) per year.  Dealer shall, within thirty (30) days after receiving notification from KTC of its exercise of said option, at Dealer's expense, inventory, tag, pack and deliver such Products as KTC has elected to repurchase to KTC in accordance with KTC's instructions.

B.     **Business Relations After Termination.**   Any business relations of any nature whatsoever between KTC and Dealer after the expiration or termination of this Agreement shall not operate as an extension or renewal of this Agreement.

Nevertheless, all such business relations, so long as they are continued, will be governed by terms identical with the provisions of this Agreement.

18.   **Scope of Agreement.**   Dealer agrees to be bound by all of the terms and conditions contained in this Agreement and in the exhibits and documents attached to this Agreement.   In addition, Dealer acknowledges and agrees that this Agreement incorporates certain information, manuals, policies, operating and procedural directions, bulletins, instructions and other materials issued by KTC (together with all amendments and supplements thereto, the "KTC Materials") by reference, and agrees to be bound by all of the terms and conditions of any KTC Materials (a) currently or hereafter posted on KubotaLink, or (b) delivered to Dealer by KTC after the date hereof, in each case beginning on the thirtieth (30th) day after the delivery thereof by KTC (unless a longer time period is provided in the KTC Materials), including, without limitation, each of the following:

- KTC Dealer Standard Terms and Discount Schedule;
- KTC Technical Service Certification Program Application;
- KubotaLink Instruction Manuals;
- Kubota Dealer Ad Builder;
- Kubota Limited Warranty;
- KTC Warranty Handbook;
- Pre-Delivery Forms;
- Internet Policy; and
- All other information, manuals, policies, operating and procedural directions, bulletins, instructions and other materials hereafter posted on KubotaLink or delivered by KTC, as each of the foregoing may be amended, modified or supplemented by KTC from time to time.

In addition, Dealer and KTC acknowledge and agree that the form of this Agreement is, among other things, being utilized in 2004 as an agreement that replaces previously existing and effective Dealer Sales and Service Agreements between KTC and various dealers.   If Dealer and KTC are entering into this Agreement as a replacement of a previously existing and effective Dealer Sales and Service Agreement between KTC and Dealer, then Dealer agrees that this Agreement shall also incorporate  by reference, and Dealer hereby agrees to be bound by all of the terms and conditions of, any KTC Materials signed by an officer of KTC and delivered to Dealer prior to the date hereof under such previously existing and effective Dealer Sales and Service Agreement.

19.   **Agreement Complete**.   Other than as set forth in Paragraph 18, this Agreement cancels, supersedes and annuls all prior contracts, agreements and understandings between KTC and Dealer and there are no representations, promises, agreements or understandings except as stated herein, all negotiations, representations and understandings being merged herein; provided, however, that Dealer agrees to continue to comply with all KTC Materials previously delivered to Dealer that were signed by an officer of KTC.   No provision of this Agreement may be varied, modified or amended except by an instrument in writing duly executed by both parties hereto, except that KTC may amend

the Products listed in Exhibit A hereto and each and all of the KTC Materials at any time, and from time to time, upon thirty (30) days' advance notice to Dealer, which notice may be effected by providing a copy of such modified exhibit or document to Dealer, or by posting a copy of the same on KubotaLink. Dealer and KTC further agree that they may, from time to time, amend Exhibit E to add or delete any one or more Retail Store(s) to or from this Agreement; provided that Dealer and KTC agree that no such addition or deletion shall occur unless KTC, in its sole discretion, shall approve. Any such amendment to Exhibit E may be effected by both Dealer and KTC executing a revised copy of Exhibit E and attaching such Exhibit E hereto.

20. **Assignment.** This Agreement may not be assigned or transferred by Dealer nor may Dealer's rights or duties pursuant to this Agreement be assigned or delegated, provided that this Agreement shall be binding upon any of Dealer's successors or heirs. Dealer agrees that KTC may wholly or partially assign or transfer its rights hereunder. Dealer agrees that, with respect to any such assignment or transfer and/or the assignment or transfer of evidence of indebtedness given by Dealer to KTC, the assignee or transferee shall have all of KTC's rights and remedies and that Dealer will not assert as a defense, counterclaim, set-off, cross-complaint, or otherwise any claim, known or unknown, which Dealer now has or hereafter acquires against KTC in any action commenced by an assignee or transferee and will pay the indebtedness to the assignee or transferee according to the terms of the indebtedness.

21. **Relationship of the Parties - Dealer Not Agent.** The relationship between KTC and Dealer is and shall be that of seller and buyer; nothing contained in this Agreement shall be construed as creating the relationship of employer and employee, franchiser and franchisee, master and servant, or principal and agent between the parties; if any payment made by Dealer to KTC hereunder might otherwise be construed as constituting a direct or indirect franchise fee, such payment shall be forfeit and shall be promptly remitted to Dealer. Dealer shall have no right or authority to assume or create any obligation for or on behalf of KTC or the manufacturers of Products. Dealer shall conduct all of its operations in its own behalf and for its own account. Except as otherwise expressly set forth herein, KTC shall not be liable for any expenditure made or incurred by Dealer in connection with Dealer's performance of its obligations pursuant to this Agreement or otherwise.

22. **Confidentiality.** Dealer shall keep confidential all, and shall not divulge to any other party any, of the KTC Materials, trade secrets or private or confidential information of KTC, unless such information (a) is or becomes generally available to the public other than as a result of a disclosure by Dealer or (b) is legally compelled to be disclosed whether by law or by or to a judicial, administrative or regulatory authority; provided, however, that Dealer shall provide KTC with prompt written notice of such legal compulsion so that KTC may seek a protective order or other available remedy. Dealer will use its best efforts to obtain reliable assurance that information so disclosed will be treated confidentially.

23. **Severability.** If any term or other provision of this Agreement is held by a court or other governmental agency of competent jurisdiction to be invalid, illegal or unenforceable, all

other provisions of this Agreement shall remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party.  Upon such a determination, this Agreement shall be deemed modified so as to effect the original intent of the parties as closely as possible in a manner reasonably acceptable to KTC in order that the transactions contemplated hereby be consummated as originally provided in this Agreement to the fullest extent possible.

24.   **Waiver.**   Failure of either party to require performance of any provision of this Agreement shall not affect the right of such party to require full performance thereof at any time thereafter, and the waiver by either party of a breach of any such provision shall not constitute a waiver of any subsequent breach thereof, nor nullify the validity of such provision.

25.   **Notices.**   All notices required or permitted to be given pursuant to this Agreement to either party shall be deemed to have been duly given and shall be effective (a) when delivered personally, (b) the day following the day on which the same has been delivered prepaid to a reputable national overnight air courier service or (c) the third business day following the day on which the same is sent by certified or registered mail, postage prepaid, in each case to the party at the address set forth in this Agreement, or to such other address as the party may have previously designated by written notice to the other party.

26.   **Headings.**   The paragraph and section headings herein are for convenience only and shall not affect the construction or interpretation hereof.

27.   **Execution.**   This Agreement is not valid unless executed by a duly authorized officer of KTC and by Dealer, if Dealer is an individual, by a general partner of Dealer, if Dealer is a partnership, by an authorized person, if Dealer is a limited liability company, or by a duly authorized officer of Dealer, if Dealer is a corporation.  The person who executes this Agreement on behalf of Dealer, by doing so, warrants that he is duly authorized to do so.  If Dealer is a corporation, Dealer shall furnish to KTC a copy, duly certified by its Secretary or an Assistant Secretary, of a resolution of Dealer's Board of Directors authorizing the execution hereof by the executing officer.  A form of corporate resolution that will suffice for this purpose is attached hereto as Exhibit D.

IN WITNESS WHEREOF, the parties have executed this Agreement.

DEALER:

_Bobcat Ocala Inc Incorporated d/b/a Agricon Equipment Company_
Legal Name

By _Jacques Ford_
'Printed Name: _JACQUES FORD_    Title: _PRES._

By _Carroll E. Lewis_
Printed Name: _CARROLL E. LEWIS_ Title: _V. P._

By _Dana E. Ford_
Printed Name: _DANA E. FORD_ Title: _SEC._

By _Jackie C. Lewis_
Printed Name: _JACKIE C. LEWIS_ Title: _TRES._

Executed by Dealer as of this _24_ day of _Sept_ , 20 _08_

This Agreement is executed by KTC this _13_ day of _October_, 20 _08_ which date shall
constitute the effective date thereof.

KUBOTA TRACTOR CORPORATION

By _____
Printed Name: Tetsuji (Mike) Tomita    Title: President

20

# Kubota Dealer Sales and Service Agreement

## <u>LIST OF EXHIBITS</u>

Exhibit A                         Products

Exhibit B                         Owners and Managers

Exhibit C                         General Continuing Guarantee

Exhibit D                         Form of Corporate Resolution

Exhibit E                         Additional Retail Store Locations

# Kubota Dealer Sales and Service Agreement

## Exhibit A

"Products" as used in the above Agreement shall include:

☒ **TRACTORS**

☒ **RESIDENTIAL & COMMERCIAL MOWING EQUIPMENT**

☒ **CONSTRUCTION EQUIPMENT**

☒ **UTILITY VEHICLES**

Implements, Accessories and Replacement parts for the above Products.

**Acknowledged and Agreed:**

KUBOTA TRACTOR CORPORATION

By: _____

Printed Name: Tetsuji (Mike) Tomita

Title:  President

Date: _10/13/08_

Bobcat of Ocala, Incorporated
d/b/a Agwear Equipment Company

DEALER: _____

By: _Jacques Ford_

Printed Name: _JACQUES FORD_

Title: _PRESIDENT_

Date: _9-24-2008_

22

# Kubota Dealer Sales and Service Agreement

## Exhibit B

1.  In accordance with the provisions of Paragraph 1.B of the above Agreement, Dealer represents and warrants that the following are all of the persons or entities who will have an ownership interest in Dealer:

| Name JACQUES FORD | Title PRESIDENT | % Interest 25% | Authorized KTC Dealer Affiliations: *(Please list)* |
|---|---|---|---|
| Resident Address 405 S.E. 15th AVE | | ☒ Active Owner | |
| City OCALA  State FL. | Zip 34471 | ☐ Passive Owner | |
| Name DANA E. FORD | Title SEC. | % Interest 25% | Authorized KTC Dealer Affiliations: *(Please list)* |
| Resident Address 405 S.E. 15th AVE. | | ☒ Active Owner | |
| City OCALA  State FL. | Zip 34471 | ☐ Passive Owner | |
| Name CARROLL E. LEWIS | Title V.P. | % Interest 25% | Authorized KTC Dealer Affiliations: *(Please list)* |
| Resident Address 6800 S.E. 18th Terrace Rd. | | ☐ Active Owner | |
| City OCALA  State FL | Zip 34476 | ☒ Passive Owner | |
| Name JACKIE C. LEWIS | Title Tres. | % Interest 25% | Authorized KTC Dealer Affiliations: *(Please list)* |
| Resident Address 6800 S.E. 18th Terrace Rd | | ☐ Active Owner | |
| City OCALA  State FL. | Zip 34476 | ☒ Passive Owner | |

# Kubota Dealer Sales and Service Agreement
## Exhibit C

## General Continuing Guarantee

1.    **Guarantee.**  In order to induce KUBOTA TRACTOR CORPORATION ("KTC") to sell goods and merchandise to *Osprey Equipment Company* ("Dealer") and to induce KTC and KUBOTA CREDIT CORPORATION, U.S.A. ("KCC") to provide financing services and other consideration to Dealer, the undersigned jointly and severally guarantee to KTC and KCC the prompt payment when due of all Indebtedness (as defined below). Indebtedness shall mean all indebtedness, obligations and liabilities which Dealer may now or hereafter owe or incur to KTC, KCC or any of their affiliates, together with any interest and costs of collection, including reasonable attorney's fees.  Indebtedness shall include, without limitation,   obligations   arising   out   of   or   relating   to   any   of   the   following:

(i)   that certain Dealer Sales and Service Agreement between KTC and Dealer, executed by Dealer as of *9-24-2008* (the "Dealer Agreement"), and any other agreements executed by Dealer pursuant thereto from time to time; and

(ii)   that certain Retail Finance Agreement between KCC and Dealer, executed by Dealer as of *9-24-2008* , and any other agreements executed by Dealer pursuant thereto from time to time.

2.    **Nature of Guarantee.**    The liability of the undersigned pursuant to this guarantee shall be irrevocable and continuing and shall only be affected by the payment to KTC or KCC, as the case may be, of the full amount of all Indebtedness by Dealer; provided that no payments made by the undersigned to KTC or KCC, as the case may be, shall be held to diminish the continuing liability of the undersigned, unless and until written notice is given to KTC or KCC, as the case may be, that such payments are at the time thereof being made for the purpose of liquidating such liability.  Upon any default of Dealer, KTC or KCC may, at its option, proceed directly, without notice, against the undersigned to collect the full amount of the Indebtedness.

3.    **Certain Waivers.**    The undersigned hereby waives the right to require KTC or KCC to proceed against Dealer or to pursue any other remedy, waives the right to have the property of Dealer first applied to the discharge of the Indebtedness, and waives the pleading of any statute of limitations as a defense to the Indebtedness.  Any circumstance which tolls the statute of limitations applicable to Dealer shall also operate to toll the statute of limitations applicable to the undersigned. The undersigned waives any defense arising out of the absence, impairment or loss of any right of reimbursement or subrogation or any other right or remedy of the undersigned against KTC or KCC.  The undersigned hereby waives, to the fullest extent permitted by law, all rights and benefits under any applicable law purporting to reduce the undersigned's obligations in proportion to the obligation of the Dealer.  The undersigned hereby waives any defense based upon or arising by reason of: (a) any lack of authority of any officer, director or any other person acting or purporting to act on behalf of Dealer, or any defect in the

26

formation of Dealer; (b) any act or omission by Dealer which directly or indirectly results in or aids the discharge of Dealer or any Indebtedness by operation of law or otherwise; or (c) any modification of the Indebtedness or amendment, modification or waiver of the agreements evidencing the Indebtedness, in any form whatsoever, including without limitation the renewal, extension, acceleration or other change in time for payment or performance of the Indebtedness, any waiver or modification of conditions precedent or any other change in the terms of the Indebtedness or any part thereof.  The undersigned hereby waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor and notices of acceptance of this guarantee and of the existence, creation or incurring of new or additional obligations.  The undersigned hereby represents that it, as of the date hereof, has adequate information relating to, and is aware of, the operations and financial condition of Dealer.  The undersigned assumes the responsibility for being and keeping itself informed of the operations and financial condition of Dealer and of all other circumstances bearing upon the risk of nonpayment or nonperformance by Dealer of the Indebtedness which diligent inquiry would reveal, represents that it has adequate means of obtaining such financial information from Dealer on a continuing basis, and agrees that KTC and KCC shall have no duty to advise the undersigned of information known to them regarding such condition or any such circumstances. The undersigned hereby acknowledges that it is executing and delivering this guarantee in consideration of KTC and KCC, as the case may be, extending the Indebtedness to Dealer and the undersigned further acknowledges that the undersigned, as a direct or indirect equity owner of Dealer or otherwise, will benefit from such extension of indebtedness.  The undersigned hereby waives all defenses based upon its level of ownership interest of Dealer or based upon its level, or lack of, involvement in and knowledge of the management or operations of Dealer.  The undersigned hereby waives notice of any action taken or omitted by KTC or KCC in reliance hereon, any requirement that KTC and KCC be diligent and prompt in making demands hereunder, notice of any waiver or amendment of any terms and conditions of the Indebtedness, notice of any default by Dealer or the assertion of any right of KTC or KCC hereunder, and any right to plead or assert any election of remedies in any action to enforce this guarantee in respect of its obligations hereunder.

**The undersigned warrants and agrees that each of the waivers set forth above is made with the undersigned's full knowledge of its significance and consequences and made after the opportunity to consult with counsel of its own choosing, and that under the circumstances, the waivers are reasonable and not contrary to public policy or law.  If any of said waivers are determined to be contrary to any applicable law or public policy, such waiver shall be effective to the extent permitted by law.**

4.    **Bankruptcy Not Discharge.**  Notwithstanding anything to the contrary herein contained, this guarantee shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of any or all of the Indebtedness is rescinded or must otherwise be restored or returned by KTC or KCC, as the case may be, upon the insolvency, bankruptcy or reorganization of Dealer.  Notwithstanding any modification, discharge or extension of the Indebtedness or any amendment, waiver, modification, stay or cure of the rights of KTC or KCC which may occur in any bankruptcy or reorganization case or proceeding concerning Dealer, whether permanent or temporary, and whether or not assented to by KTC or KCC, the undersigned hereby agrees that it shall be obligated hereunder to pay and perform the Indebtedness and discharge its other obligations in accordance with the terms thereof as set forth

# Kubota Dealer Sales and Service Agreement
## Exhibit C

## General Continuing Guarantee

1.      **Guarantee.**   In order to induce KUBOTA TRACTOR CORPORATION ("KTC") to sell goods and merchandise to *Jefferson Equipment Company* ("Dealer") and to induce KTC and KUBOTA CREDIT CORPORATION, U.S.A. ("KCC") to provide financing services and other consideration to Dealer, the undersigned jointly and severally guarantee to KTC and KCC the prompt payment when due of all Indebtedness (as defined below). Indebtedness shall mean all indebtedness, obligations and liabilities which Dealer may now or hereafter owe or incur to KTC, KCC or any of their affiliates, together with any interest and costs of collection, including reasonable attorney's fees.   Indebtedness shall include, without limitation,   obligations   arising   out   of   or   relating   to   any   of   the   following:

   (i)   that certain Dealer Sales and Service Agreement between KTC and Dealer, executed by Dealer as of *9-24-2008* (the "Dealer Agreement"), and any other agreements executed by Dealer pursuant thereto from time to time; and

   (ii)   that certain Retail Finance Agreement between KCC and Dealer, executed by Dealer as of *9-24-2008*, and any other agreements executed by Dealer pursuant thereto from time to time.

2.      **Nature of Guarantee.**    The   liability   of   the   undersigned   pursuant   to   this guarantee shall be irrevocable and continuing and shall only be affected by the payment to KTC or KCC, as the case may be, of the full amount of all Indebtedness by Dealer; provided that no payments made by the undersigned to KTC or KCC, as the case may be, shall be held to diminish the continuing liability of the undersigned, unless and until written notice is given to KTC or KCC, as the case may be, that such payments are at the time thereof being made for the purpose of liquidating such liability.   Upon any default of Dealer, KTC or KCC may, at its option, proceed directly, without notice, against the undersigned to collect the full amount of the Indebtedness.

3.      **Certain Waivers.**    The undersigned hereby waives the right to require KTC or KCC to proceed against Dealer or to pursue any other remedy, waives the right to have the property of Dealer first applied to the discharge of the Indebtedness, and waives the pleading of any statute of limitations as a defense to the Indebtedness.   Any circumstance which tolls the statute of limitations applicable to Dealer shall also operate to toll the statute of limitations applicable to the undersigned. The undersigned waives any defense arising out of the absence, impairment or loss of any right of reimbursement or subrogation or any other right or remedy of the undersigned against KTC or KCC.   The undersigned hereby waives, to the fullest extent permitted by law, all rights and benefits under any applicable law purporting to reduce the undersigned's obligations in proportion to the obligation of the Dealer.   The undersigned hereby waives any defense based upon or arising by reason of: (a) any lack of authority of any officer, director or any other person acting or purporting to act on behalf of Dealer, or any defect in the

formation of Dealer; (b) any act or omission by Dealer which directly or indirectly results in or aids the discharge of Dealer or any Indebtedness by operation of law or otherwise; or (c) any modification of the Indebtedness or amendment, modification or waiver of the agreements evidencing the Indebtedness, in any form whatsoever, including without limitation the renewal, extension, acceleration or other change in time for payment or performance of the Indebtedness, any waiver or modification of conditions precedent or any other change in the terms of the Indebtedness or any part thereof. The undersigned hereby waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor and notices of acceptance of this guarantee and of the existence, creation or incurring of new or additional obligations. The undersigned hereby represents that it, as of the date hereof, has adequate information relating to, and is aware of, the operations and financial condition of Dealer. The undersigned assumes the responsibility for being and keeping itself informed of the operations and financial condition of Dealer and of all other circumstances bearing upon the risk of nonpayment or nonperformance by Dealer of the Indebtedness which diligent inquiry would reveal, represents that it has adequate means of obtaining such financial information from Dealer on a continuing basis, and agrees that KTC and KCC shall have no duty to advise the undersigned of information known to them regarding such condition or any such circumstances. The undersigned hereby acknowledges that it is executing and delivering this guarantee in consideration of KTC and KCC, as the case may be, extending the Indebtedness to Dealer and the undersigned further acknowledges that the undersigned, as a direct or indirect equity owner of Dealer or otherwise, will benefit from such extension of indebtedness. The undersigned hereby waives all defenses based upon its level of ownership interest of Dealer or based upon its level, or lack of, involvement in and knowledge of the management or operations of Dealer. The undersigned hereby waives notice of any action taken or omitted by KTC or KCC in reliance hereon, any requirement that KTC and KCC be diligent and prompt in making demands hereunder, notice of any waiver or amendment of any terms and conditions of the Indebtedness, notice of any default by Dealer or the assertion of any right of KTC or KCC hereunder, and any right to plead or assert any election of remedies in any action to enforce this guarantee in respect of its obligations hereunder.

**The undersigned warrants and agrees that each of the waivers set forth above is made with the undersigned's full knowledge of its significance and consequences and made after the opportunity to consult with counsel of its own choosing, and that under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any of said waivers are determined to be contrary to any applicable law or public policy, such waiver shall be effective to the extent permitted by law.**

4.   **Bankruptcy Not Discharge.**  Notwithstanding anything to the contrary herein contained, this guarantee shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of any or all of the Indebtedness is rescinded or must otherwise be restored or returned by KTC or KCC, as the case may be, upon the insolvency, bankruptcy or reorganization of Dealer. Notwithstanding any modification, discharge or extension of the Indebtedness or any amendment, waiver, modification, stay or cure of the rights of KTC or KCC which may occur in any bankruptcy or reorganization case or proceeding concerning Dealer, whether permanent or temporary, and whether or not assented to by KTC or KCC, the undersigned hereby agrees that it shall be obligated hereunder to pay and perform the Indebtedness and discharge its other obligations in accordance with the terms thereof as set forth

in this guarantee in effect on the date hereof.  The undersigned understands and acknowledges that by virtue of this guarantee, it has specifically assumed any and all risks of a bankruptcy or reorganization case or proceeding with respect to Dealer.

     **5.**    **Certain Information.**    The undersigned hereby acknowledges that it has received and reviewed the Dealer Agreement and also agrees to timely provide to KTC and KCC the information requested with respect to the undersigned in Paragraph 6H of the Dealer Agreement.

     **6.**    **Legal Fees; Severability; Assignment.** The undersigned further agrees, without demand, immediately to reimburse KTC or KCC for all costs and expenses, including attorney's fees, incurred in the enforcement of this guarantee.  Any provision of this guarantee which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or thereof or affecting the validity or enforceability of such provision in any other jurisdiction.  This guarantee shall be binding upon and inure to the benefit of KTC and KCC and the undersigned and their respective successors and assigns, provided that the undersigned shall not have the right to assign its rights and obligations hereunder without the prior written consent of KTC and KCC (and any attempted assignment in contravention of the terms hereof shall be void).  This guarantee shall, without further reference, pass to, and may be relied on and enforced by, any successor or assignee of KTC or KCC, as the case may be.

Dated: _Sept 24, 2008_

_Dana E. Ford_
Signature of Individual

_DANA E. FORD_
Printed Name of Individual

Address, Phone Number and Fax Number of Individual:
_405 SE 15th Avenue_
_Ocala, Fl 34471_
_(352) 598-1111 (352) 620-0295_

31

# Kubota Dealer Sales and Service Agreement

## Exhibit D

## Corporate Dealer's Resolutions Certificate

I have compared the following resolution, with a resolution adopted by the Board of Directors of _Bobcat of Ocala, Incorporated Aghin Agriecon Equipment Company_,
*(Full legal name of Company)*

a company incorporated, organized and existing under the laws of the State of _Florida_, having its principal place of business at

_5211 W. Silver Springs Blvd_
*(Address)*

_Ocala_                           _Florida_
*(Town)*                          *(State)*

at a regular or special meeting thereof, a quorum being present on the _____ day of _____, _____, as recorded in the minutes books of the Company and I, as Secretary of the said Company, hereby certify that the same is a true, correct and complete copy thereof and that the same has not been rescinded.

"BE IT RESOLVED that the Company shall enter into a Dealer Sales and Service Agreement, including all exhibits, documents and materials referenced therein, with Kubota Tractor Corporation on the form now in use by Kubota Tractor Corporation for such purpose and

_Jacques Ford_                           _PRESIDENT_
*(Name)*                                  *(Title)*

shall be and is hereby authorized to execute such Agreement and related documents on behalf of and in the name of the Company."

"BE IT RESOLVED that any _____One_____ of the following
*One, two, three, etc.*

named officers of the Company.

Name _JACQUES FORD_ PRESIDENT

Name _CARROLL E. LEWIS_ VICE PRESIDENT

Name _DANA E. FORD_ SECRETARY

Name _JACKIE C. LEWIS_ TREASURER

Name _____

and that any _____ *None* _____

One, two, three, etc.

of the following named employees of the Company who are not officers thereof

Name _____  Position _____

Name _____  Position _____

Name _____  Position _____

Name _____  Position _____

shall be and hereby are authorized to execute on behalf and in the name of the Company any and all agreements, assignments, transfers, endorsements, security documents, negotiable instruments or other documents necessary to conduct the affairs of the Company in its capacity as an authorized dealer of Kubota Tractor Corporation.  The powers vested in the said named persons shall continue in full force and effect until written notice of rescission or modification thereof has been received by Kubota Tractor Corporation and the Company shall indemnify and save harmless Kubota Tractor Corporation for any loss suffered or liability incurred by Kubota Tractor Corporation in reliance upon this resolution after revocation or termination by operation of law or otherwise in the absence of such notice."

Witness my hand and the seal of *Bobcat of Ocala, d/b/a African Equipment Company*

(Name of Company)

this ____ *24* ____ day of ____ *Sept* ____ , *2008* .

_____ *Dana E. Ford*

Signature of Secretary

(Corporate Seal)

# Kubota Dealer Sales and Service Agreement
## Exhibit C

## General Continuing Guarantee

1.    **Guarantee.** In order to induce KUBOTA TRACTOR CORPORATION ("KTC") to sell goods and merchandise to ~~Bobcat of Ocalee . Incorporated~~ ~~Florida Agpro Equipment Company~~ ("Dealer") and to induce KTC and KUBOTA CREDIT CORPORATION, U.S.A. ("KCC") to provide financing services and other consideration to Dealer, the undersigned jointly and severally guarantee to KTC and KCC the prompt payment when due of all Indebtedness (as defined below). Indebtedness shall mean all indebtedness, obligations and liabilities which Dealer may now or hereafter owe or incur to KTC, KCC or any of their affiliates, together with any interest and costs of collection, including reasonable attorney's fees.  Indebtedness shall include, without limitation,  obligations  arising  out  of  or  relating  to  any  of  the  following:

(i)   that certain Dealer Sales and Service Agreement between KTC and Dealer, executed by Dealer as of   *9-24-11/08* (the "Dealer Agreement"), and any other agreements executed by Dealer pursuant thereto from time to time; and

(ii)   that certain Retail Finance Agreement between KCC and Dealer, executed by Dealer as of *7-24-2008* , and any other agreements executed by Dealer pursuant thereto from time to time.

2.    **Nature of Guarantee.**    The liability of the undersigned pursuant to this guarantee shall be irrevocable and continuing and shall only be affected by the payment to KTC or KCC, as the case may be, of the full amount of all Indebtedness by Dealer; provided that no payments made by the undersigned to KTC or KCC, as the case may be, shall be held to diminish the continuing liability of the undersigned, unless and until written notice is given to KTC or KCC, as the case may be, that such payments are at the time thereof being made for the purpose of liquidating such liability.  Upon any default of Dealer, KTC or KCC may, at its option, proceed directly, without notice, against the undersigned to collect the full amount of the Indebtedness.

3.    **Certain Waivers.**    The undersigned hereby waives the right to require KTC or KCC to proceed against Dealer or to pursue any other remedy, waives the right to have the property of Dealer first applied to the discharge of the Indebtedness, and waives the pleading of any statute of limitations as a defense to the Indebtedness.  Any circumstance which tolls the statute of limitations applicable to Dealer shall also operate to toll the statute of limitations applicable to the undersigned. The undersigned waives any defense arising out of the absence, impairment or loss of any right of reimbursement or subrogation or any other right or remedy of the undersigned against KTC or KCC.  The undersigned hereby waives, to the fullest extent permitted by law, all rights and benefits under any applicable law purporting to reduce the undersigned's obligations in proportion to the obligation of the Dealer.  The undersigned hereby waives any defense based upon or arising by reason of: (a) any lack of authority of any officer, director or any other person acting or purporting to act on behalf of Dealer, or any defect in the

formation of Dealer; (b) any act or omission by Dealer which directly or indirectly results in or aids the discharge of Dealer or any Indebtedness by operation of law or otherwise; or (c) any modification of the Indebtedness or amendment, modification or waiver of the agreements evidencing the Indebtedness, in any form whatsoever, including without limitation the renewal, extension, acceleration or other change in time for payment or performance of the Indebtedness, any waiver or modification of conditions precedent or any other change in the terms of the Indebtedness or any part thereof. The undersigned hereby waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor and notices of acceptance of this guarantee and of the existence, creation or incurring of new or additional obligations. The undersigned hereby represents that it, as of the date hereof, has adequate information relating to, and is aware of, the operations and financial condition of Dealer. The undersigned assumes the responsibility for being and keeping itself informed of the operations and financial condition of Dealer and of all other circumstances bearing upon the risk of nonpayment or nonperformance by Dealer of the Indebtedness which diligent inquiry would reveal, represents that it has adequate means of obtaining such financial information from Dealer on a continuing basis, and agrees that KTC and KCC shall have no duty to advise the undersigned of information known to them regarding such condition or any such circumstances. The undersigned hereby acknowledges that it is executing and delivering this guarantee in consideration of KTC and KCC, as the case may be, extending the Indebtedness to Dealer and the undersigned further acknowledges that the undersigned, as a direct or indirect equity owner of Dealer or otherwise, will benefit from such extension of indebtedness. The undersigned hereby waives all defenses based upon its level of ownership interest of Dealer or based upon its level, or lack of, involvement in and knowledge of the management or operations of Dealer. The undersigned hereby waives notice of any action taken or omitted by KTC or KCC in reliance hereon, any requirement that KTC and KCC be diligent and prompt in making demands hereunder, notice of any waiver or amendment of any terms and conditions of the Indebtedness, notice of any default by Dealer or the assertion of any right of KTC or KCC hereunder, and any right to plead or assert any election of remedies in any action to enforce this guarantee in respect of its obligations hereunder.

**The undersigned warrants and agrees that each of the waivers set forth above is made with the undersigned's full knowledge of its significance and consequences and made after the opportunity to consult with counsel of its own choosing, and that under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any of said waivers are determined to be contrary to any applicable law or public policy, such waiver shall be effective to the extent permitted by law.**

4.      **Bankruptcy Not Discharge.**  Notwithstanding anything to the contrary herein contained, this guarantee shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of any or all of the Indebtedness is rescinded or must otherwise be restored or returned by KTC or KCC, as the case may be, upon the insolvency, bankruptcy or reorganization of Dealer.  Notwithstanding any modification, discharge or extension of the Indebtedness or any amendment, waiver, modification, stay or cure of the rights of KTC or KCC which may occur in any bankruptcy or reorganization case or proceeding concerning Dealer, whether permanent or temporary, and whether or not assented to by KTC or KCC, the undersigned hereby agrees that it shall be obligated hereunder to pay and perform the Indebtedness and discharge its other obligations in accordance with the terms thereof as set forth

in this guarantee in effect on the date hereof.  The undersigned understands and acknowledges that by virtue of this guarantee, it has specifically assumed any and all risks of a bankruptcy or reorganization case or proceeding with respect to Dealer.

      **5.**   **Certain Information.**    The undersigned hereby acknowledges that it has received and reviewed the Dealer Agreement and also agrees to timely provide to KTC and KCC the information requested with respect to the undersigned in Paragraph 6H of the Dealer Agreement.

      **6.**   **Legal Fees; Severability; Assignment.** The undersigned further agrees, without demand, immediately to reimburse KTC or KCC for all costs and expenses, including attorney's fees, incurred in the enforcement of this guarantee.  Any provision of this guarantee which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or thereof or affecting the validity or enforceability of such provision in any other jurisdiction.  This guarantee shall be binding upon and inure to the benefit of KTC and KCC and the undersigned and their respective successors and assigns, provided that the undersigned shall not have the right to assign its rights and obligations hereunder without the prior written consent of KTC and KCC (and any attempted assignment in contravention of the terms hereof shall be void).  This guarantee shall, without further reference, pass to, and may be relied on and enforced by, any successor or assignee of KTC or KCC, as the case may be.

Dated: _Sept 24, 2008_

_Carrie E Lewis_
Signature of Individual

_CARROLL E. LEWIS_
Printed Name of Individual

Address, Phone Number and Fax Number of Individual:

_6800 SW 18TH TERRACE ROAD_

_OCALA, FL 34476_

_352 237 1452_

31

# Kubota Dealer Sales and Service Agreement
## Exhibit C

## General Continuing Guarantee

**1.     Guarantee.** In order to induce KUBOTA TRACTOR CORPORATION ("KTC") to sell goods and merchandise to ~Babcock of Ocala , Incorporated~ ~d/b/a Argiced Equipment Company~ ("Dealer") and to induce KTC and KUBOTA CREDIT CORPORATION, U.S.A. ("KCC") to provide financing services and other consideration to Dealer, the undersigned jointly and severally guarantee to KTC and KCC the prompt payment when due of all Indebtedness (as defined below). Indebtedness shall mean all indebtedness, obligations and liabilities which Dealer may now or hereafter owe or incur to KTC, KCC or any of their affiliates, together with any interest and costs of collection, including reasonable attorney's fees.  Indebtedness shall include, without limitation,  obligations  arising  out  of  or  relating  to  any  of  the  following:

(i)   that certain Dealer Sales and Service Agreement between KTC and Dealer, executed by Dealer as of _9-24. 2008_ (the "Dealer Agreement"), and any other agreements executed by Dealer pursuant thereto from time to time; and

(ii)   that certain Retail Finance Agreement between KCC and Dealer, executed by Dealer as of _9-24-2008_ , and any other agreements executed by Dealer pursuant thereto from time to time.

**2.     Nature of Guarantee.**     The liability of the undersigned pursuant to this guarantee shall be irrevocable and continuing and shall only be affected by the payment to KTC or KCC, as the case may be, of the full amount of all Indebtedness by Dealer; provided that no payments made by the undersigned to KTC or KCC, as the case may be, shall be held to diminish the continuing liability of the undersigned, unless and until written notice is given to KTC or KCC, as the case may be, that such payments are at the time thereof being made for the purpose of liquidating such liability.  Upon any default of Dealer, KTC or KCC may, at its option, proceed directly, without notice, against the undersigned to collect the full amount of the Indebtedness.

**3.     Certain Waivers.**     The undersigned hereby waives the right to require KTC or KCC to proceed against Dealer or to pursue any other remedy, waives the right to have the property of Dealer first applied to the discharge of the Indebtedness, and waives the pleading of any statute of limitations as a defense to the Indebtedness.  Any circumstance which tolls the statute of limitations applicable to Dealer shall also operate to toll the statute of limitations applicable to the undersigned. The undersigned waives any defense arising out of the absence, impairment or loss of any right of reimbursement or subrogation or any other right or remedy of the undersigned against KTC or KCC.  The undersigned hereby waives, to the fullest extent permitted by law, all rights and benefits under any applicable law purporting to reduce the undersigned's obligations in proportion to the obligation of the Dealer.  The undersigned hereby waives any defense based upon or arising by reason of: (a) any lack of authority of any officer, director or any other person acting or purporting to act on behalf of Dealer, or any defect in the

formation of Dealer; (b) any act or omission by Dealer which directly or indirectly results in or aids the discharge of Dealer or any Indebtedness by operation of law or otherwise; or (c) any modification of the Indebtedness or amendment, modification or waiver of the agreements evidencing the Indebtedness, in any form whatsoever, including without limitation the renewal, extension, acceleration or other change in time for payment or performance of the Indebtedness, any waiver or modification of conditions precedent or any other change in the terms of the Indebtedness or any part thereof. The undersigned hereby waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor and notices of acceptance of this guarantee and of the existence, creation or incurring of new or additional obligations.  The undersigned hereby represents that it, as of the date hereof, has adequate information relating to, and is aware of, the operations and financial condition of Dealer. The undersigned assumes the responsibility for being and keeping itself informed of the operations and financial condition of Dealer and of all other circumstances bearing upon the risk of nonpayment or nonperformance by Dealer of the Indebtedness which diligent inquiry would reveal, represents that it has adequate means of obtaining such financial information from Dealer on a continuing basis, and agrees that KTC and KCC shall have no duty to advise the undersigned of information known to them regarding such condition or any such circumstances. The undersigned hereby acknowledges that it is executing and delivering this guarantee in consideration of KTC and KCC, as the case may be, extending the Indebtedness to Dealer and the undersigned further acknowledges that the undersigned, as a direct or indirect equity owner of Dealer or otherwise, will benefit from such extension of indebtedness.  The undersigned hereby waives all defenses based upon its level of ownership interest of Dealer or based upon its level, or lack of, involvement in and knowledge of the management or operations of Dealer. The undersigned hereby waives notice of any action taken or omitted by KTC or KCC in reliance hereon, any requirement that KTC and KCC be diligent and prompt in making demands hereunder, notice of any waiver or amendment of any terms and conditions of the Indebtedness, notice of any default by Dealer or the assertion of any right of KTC or KCC hereunder, and any right to plead or assert any election of remedies in any action to enforce this guarantee in respect of its obligations hereunder.

**The undersigned warrants and agrees that each of the waivers set forth above is made with the undersigned's full knowledge of its significance and consequences and made after the opportunity to consult with counsel of its own choosing, and that under the circumstances, the waivers are reasonable and not contrary to public policy or law.  If any of said waivers are determined to be contrary to any applicable law or public policy, such waiver shall be effective to the extent permitted by law.**

4.     **Bankruptcy Not Discharge.**  Notwithstanding anything to the contrary herein contained, this guarantee shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of any or all of the Indebtedness is rescinded or must otherwise be restored or returned by KTC or KCC, as the case may be, upon the insolvency, bankruptcy or reorganization of Dealer.  Notwithstanding any modification, discharge or extension of the Indebtedness or any amendment, waiver, modification, stay or cure of the rights of KTC or KCC which may occur in any bankruptcy or reorganization case or proceeding concerning Dealer, whether permanent or temporary, and whether or not assented to by KTC or KCC, the undersigned hereby agrees that it shall be obligated hereunder to pay and perform the Indebtedness and discharge its other obligations in accordance with the terms thereof as set forth

in this guarantee in effect on the date hereof.  The undersigned understands and acknowledges that by virtue of this guarantee, it has specifically assumed any and all risks of a bankruptcy or reorganization case or proceeding with respect to Dealer.

     **5.**    **Certain Information.**    The undersigned hereby acknowledges that it has received and reviewed the Dealer Agreement and also agrees to timely provide to KTC and KCC the information requested with respect to the undersigned in Paragraph 6H of the Dealer Agreement.

     **6.**    **Legal Fees; Severability; Assignment.** The undersigned further agrees, without demand, immediately to reimburse KTC or KCC for all costs and expenses, including attorney's fees, incurred in the enforcement of this guarantee.  Any provision of this guarantee which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or thereof or affecting the validity or enforceability of such provision in any other jurisdiction.  This guarantee shall be binding upon and inure to the benefit of KTC and KCC and the undersigned and their respective successors and assigns, provided that the undersigned shall not have the right to assign its rights and obligations hereunder without the prior written consent of KTC and KCC (and any attempted assignment in contravention of the terms hereof shall be void).  This guarantee shall, without further reference, pass to, and may be relied on and enforced by, any successor or assignee of KTC or KCC, as the case may be.

Dated: Sept 24, 2008

_Jackie C. Lewis_
Signature of Individual

_JACKIE C. LEWIS_
Printed Name of Individual

Address, Phone Number and Fax Number of Individual:
_6800 S.W. 18th TERR. Rd_
_OCALA, FL 34476_
_(352) 237-1452   (352) 237-9884_